IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA          )
                                  )
        vs.                       )        Criminal No. 17-226
                                  )
DAELON HILL-JOHNSON               )
                                  )
        Defendant.                )

## MEMORANDUM OPINION

In this criminal action, Defendant, Daelon Hill-Johnson, who previously pled guilty on February 15, 2018, to both counts of a two-count indictment, and was sentenced on June 5, 2019, to a term of 10 months of imprisonment at count 1, and 60 months of imprisonment at count 2 (to run concurrently), has filed a *pro se* Motion to Vacate, Set Aside, or Correct a Sentence pursuant to 28 U.S.C. § 2255.  ECF 156.

Defendant's § 2255 Petition identifies two general categories as forming the basis of the petition.  First, Defendant argues that "[t]he criminal complaint / W17-03105 lacked probable cause on its face to support the issuance of a warrant for the counts in the indictment."  ECF 156, p.1.  There are numerous sub-issues related to Defendant's probable cause argument. Second, Defendant argues ineffective assistance of counsel.  Id.  Similarly, there are numerous sub-issues related to Defendant's ineffective assistance of counsel argument.  The Court will endeavor to address each of these arguments in the "discussion" section below.

**I. Factual and Procedural Background**

   **A. Factual Background[1]**

On April 5, 2017, task force officers from the Pennsylvania Office of the Attorney

General sent a text message to an unknown target – Defendant in this case – using a telephone

number received from a confidential source with the goal of purchasing heroin from the target.

The officers received a text message back from the unknown target asking how much money

they had.  Law enforcement and the unknown target exchanged text messages arranging a meet

to purchase heroin from the unknown target for $260.  The target told law enforcement to call

when they were close.

   When law enforcement arrived at the meeting location – the McDonald's on Penn

Avenue in Wilkinsburg Borough, Allegheny County, Pennsylvania, the target texted that he was

on his way and asked them to wait.  Approximately 25 minutes later, the person associated with

the targeted phone number called, asking to change the meeting location and meet at the

McDonald's in East Liberty.  Police then went to the East Liberty McDonald's, located at Broad

Street and North Sheridan Avenue, and called the target telephone number.

   An undercover police officer described the vehicle that he was operating to the target so

that the target could meet him. The target then told the undercover officer that he saw him parked

on Broad Street.  As the target made this statement, the undercover officer, saw a male, later

identified as Defendant, Daelon Hill-Johnson, hang up his phone and walk toward the

undercover police vehicle.  Moments later, the defendant grabbed the passenger side, front door

---

[1] The facts set forth herein are copied directly from Defendant's Presentence Investigation Report (ECF 80), to which Defendant raised no objections.  Importantly, these same facts are set forth in the Affidavit of Probable Cause and Criminal Complaint (ECF 156-2), to which Defendant now takes issue.  The main difference between the Presentence Investigation Report and the Criminal Complaint is that the Criminal Complaint provides the precise time of day each phase of the "buy and bust" operation took place on April 5, 2017, as well as the task force officer's names.

handle of the vehicle where the undercover officer was seated, as law enforcement officers simultaneously moved in to arrest him.

Defendant attempted to flee and resisted as police detained him.  As Defendant resisted, a firearm fell from his waist area, and law enforcement observed Defendant throw one brick of suspected heroin onto the ground.  The firearm recovered from Defendant was a loaded, 9mm Glock.

Subsequent to Defendant's arrest, a search of his person located a firearm holster on the inside of his pants' waistband.  Additionally, law enforcement officers recovered an additional bundle of suspected heroin from the defendant's sweatpants' pocket, and $900 in United States currency within another pants' pocket.[2]

All of the suspected heroin recovered from Defendant was tested by the drug laboratory and found to contain fentanyl, not heroin.  The Government stipulated that the fentanyl amount was less than 4 grams (net) of fentanyl.  More specifically, according to the drug laboratory report, the stamp bags found on Defendant contained a total approximate net weight of 1.109 grams of fentanyl.  Notably, the lab report also reflects that small amounts of cocaine base and marijuana were found on Defendant; however, since the amount of each drug was less than 1 gram, the inclusion or exclusion of those drug amounts in a drug equivalency conversion would not alter the resulting base offense level achieved based solely on the fentanyl drug amount.

---

[2] Although not set forth in the Presentence Investigation Report, it was at this point in time on April 5, 2017, according to the Criminal Complaint, that Defendant was detained briefly at the Wilkinsburg police department before being transported to Allegheny County Jail, and his phone, the narcotics, and the $900 were all taken into evidence.  This information marks the end of the details provided in the Criminal Complaint.  The remaining facts, above, are taken solely from the Presentence Investigation Report (ECF 80).

### B. Procedural Background

On August 23, 2017, an indictment was filed in this case.  ECF 1.  In the indictment, the grand jury charged Defendant at Count One with possession with intent to distribute a quantity of a mixture and substance containing a detectable amount of N-phenyl-N[1-(2-phenylethyl)-4-piperidinyl] propenamide, commonly known as fentanyl, in violation of 21 U.S.C. § 841(a) and 21 U.S.C. § 841(b)(1)(C); and, at Count Two possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. 924(c)(1)(A)(i).  Id.

On August 23, 2017, the Government filed a motion for arrest warrant for Defendant pursuant to Fed.R.Crim.Pro. 9, upon the grounds that an indictment had been returned charging defendant with two offenses.  ECF 5.  United States Magistrate Judge Kelly signed the arrest warrant on August 23, 2017.  ECF 6.  The arrest warrant was issued on August 24, 2017 (ECF 7).  On September 28, 2017, after counsel was appointed to represent Defendant, Defendant appeared before United States Magistrate Judge Mitchell for arraignment.  ECF 13.  Defendant waived a detention hearing and was incarcerated.  Id., ECF 14, and ECF 20.

On October 18, 2017, Defendant's counsel filed a motion to order the United States Probation Office to prepare a pre-plea presentence report (ECF 25), which this Court granted.  ECF 26.  This motion indicated that the pre-plea presentence report was being sought by Defendant to clarify what Defendant's criminal record contained.  ECF 25.  On November 8, 2017, the Court held a status conference and learned that the pre-plea presentence report would be completed by December 18, 2017.  ECF 27.  During this status conference, the Court scheduled a change of plea hearing date for January 11, 2018, in the event Defendant chose to plead guilty, after reviewing the pre-plea presentence report.  Id.  On December 18, 2017, a pre-plea criminal history report was filed for counsel's eyes only.

On January 10, 2018, Defendant's attorney filed a motion to withdraw as Defendant's counsel due to irreconcilable differences.  ECF 34.  On January 11, 2018, the Court held a second status conference (in lieu of a change of plea hearing), and during the conference, with Defendant present, granted Defendant's counsel's motion to withdraw as Defendant's attorney. ECF 35.  The Court announced that a new attorney would be provided for Defendant and set a trial date for April 9, 2019.  Id.  On January 16, 2018, the Court signed an Order appointing a highly experienced and respected criminal defense attorney, Christy Foreman, to Defendant. ECF 38.  On this same date, the Court entered an order granting an extension of time to file pretrial motions and set another status conference for February 15, 2018.

On February 15, 2018, the Court held the status conference[3] and then reconvened the Defendant and the attorneys later that same day to hold to a change of plea hearing, at which time Defendant pled guilty to both counts of the indictment.  ECF 45 and ECF 46.

During the status conference, the Court stated as follows:

> THE COURT: Pull the microphone close to you
> so you will be a little more comfortable.
> At [the last status conference on January 11, 2018],
> your previous attorney withdrew
> his appearance at your request, correct?

---

[3] At the very beginning of the status conference, the Court had the Defendant sworn in to testify, under penalty of perjury as follows:

> THE COURT: Good morning.
> Sir, will you kindly stand to be sworn,
> please.
> DAELON HILL-JOHNSON, the defendant herein, was
> first duly sworn.
> THE COURT: Sir, the last time you were here
> was January 11, 2018, correct?
> THE DEFENDANT: Yes, sir.
> THE COURT: Do you understand that having been
> sworn, your answers to my questions are subject to the
> penalties of perjury or making a false statement if you
> do not answer truthfully?
> THE DEFENDANT: Yes.

ECF 64, p. 2-3.

THE DEFENDANT: Yes, sir.

THE COURT: As I recall, you expressed that you were not satisfied with your former attorney's performance, at least that he wasn't listening to you, is that a fair summary?

THE DEFENDANT: Yes, sir.

THE COURT: Have you had an opportunity to meet with your new attorney?

THE DEFENDANT: Yes, sir.

THE COURT: Are you satisfied with her representation so far?

THE DEFENDANT: Yes, sir.

THE COURT: We're here today to talk about how we are going to proceed. As with all defendants, criminal defendants, sir, you have essentially two choices.

You can either plead guilty or you can choose to go to trial. I set the trial date a while back with a pretrial order, set a firm trial date of April 9, 2018.

*     *     *

I don't care which decision you make today but I would like to have one decision or the other so I can work through the schedule in fairness to all of you. So, have you had time to discuss these two options with your attorney?

THE DEFENDANT: Yes, sir.

THE COURT: Would you like some more time to chat with her? Have you had enough time today to talk to her and previously?

THE DEFENDANT: Yes, sir, I had enough time.

THE COURT: So, you all counsel want to give me an update where we stand so I know which of the two options you all collectively want to pursue.

6

MS. FOREMAN: Yes, Your Honor.
As newly-appointed counsel, I just recently
received Rule 16 and I did see my client at the jail and
again today.
       I understand that previously there was an
11(c)(1)(C) plea offer that was supposed to happen in
January. In speaking with my client at this juncture,
he is not opposed to still maybe pursuing a plea. He
doesn't want the 11(c)(1)(C) for 80 months. He
understands there is a 60-month sentence with the gun
regardless.
       The discrepancy becomes what the guidelines
would be for the drugs in this case. Mr. Hill-Johnson
is adamant that the weight from the drug lab is
incorrect, that there is no way that it is, in fact, as
high as it is.

ECF 64, p 3-6.

Defendant claimed the drug weight was under 4 grams and the Government claimed it was 12.35 grams.  Because of this discrepancy in drug weight, the Court asked the Government to bring the drugs into court and weigh them in front of Defendant, and until that could happen the Court sat in recess. Id., p.  6-15.  When the status conference reconvened,[4] the Government announced that it would stipulate that the weight of the drugs was less than 4 grams.  Id., p. 16. With that stipulation, the Defendant informed the Court that he wanted to plead guilty.  Id., p. 17.

After explaining all of the trial rights that Defendant would be foregoing by pleading guilty, the Court and Defendant had the following exchange:

THE COURT: Having explained all your rights
to you in detail today, do you still intend to plead
guilty?

---

[4] The Court first reminded Defendant that he was still under oath from earlier that morning:
       THE COURT: Sir, you are here and you remember
       you are still sworn, understand?
       THE DEFENDANT: Yes, sir.
       THE COURT: We took a break a little while ago
       and the government was going to work through the issue
       of whether we are going to weigh the drugs in the
       courtroom.
ECF 64, p. 16.

THE DEFENDANT: Yes, sir.

THE COURT: The maximum sentence I'm
authorized to impose under the law including any
applicable mandatory minimums for the commission of the
offenses to which you intend to plead guilty, as you and
the government have agreed and as set forth in the plea
agreement, is as to Count 1, a term of imprisonment of
not more than 20 years, a fine not to exceed one million
dollars, a term of supervised release of three years,
and a special assessment of $100.
      Do you understand the potential sentence that
the Court is authorized to impose as to Count 1?

THE DEFENDANT: Yes, sir.

THE COURT: As to Count 2, a term of
imprisonment of not less than five years to a maximum of
life imprisonment, the Court may not place you on
probation or suspend the sentence of any person
convicted of a violation of this subsection, nor shall a
term of imprisonment imposed run concurrently with any
other term of imprisonment, a fine of not more than
$250,000, a term of supervised release of not more than
five years, a special assessment of $100.
      Do you understand the potential sentence that
the Court is authorized to impose as to Count 2?

THE DEFENDANT: Yes, sir.

THE COURT: Do you understand that the
sentence imposed as to Count 2 cannot be concurrent with
a sentence at Count 1?

THE DEFENDANT: Yes, sir.

THE COURT: So, the two sentences are separate
and will be added together, do you understand that?

THE DEFENDANT: Yes, sir.

Id., p. 23-25.

After discussing the maximum sentence the Court could impose at each count, the Court explored whether Defendant knowingly and freely made the decision to plead guilty, as follows:

> THE COURT: If you pled guilty, the probation office will prepare a Presentence Investigation Report and Recommendation of Sentence for the Court's review and you will be interviewed by the probation office in order to calculate an appropriate advisory sentence under the guidelines, understand, sir?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Has anyone made a promise or assurance to persuade you to plead guilty?
>
> THE DEFENDANT: No, sir.
>
> THE COURT: Has anyone threatened you in any way to force you to plead guilty?
>
> THE DEFENDANT: No, sir.
>
> THE COURT: Has anyone predicted or promised to you what your actual sentence will be?
>
> THE DEFENDANT: No, sir.
>
> THE COURT: Has anything I said to you here today suggested to you what your actual sentence will be?
>
> THE DEFENDANT: No, sir.
>
> THE COURT: Has anyone told you not to tell the truth or respond untruthfully to any question?
>
> THE DEFENDANT: No, sir.

Id., p. 29.

After providing the Court and Defendant with the elements of each of the two offenses charged against Defendant, the Government provided the following summary of its evidence against Defendant:

THE COURT: And now would you please summarize the government's evidence as to these two charges?

MS. GROGAN: Yes, Your Honor.
In sum, the government's evidence would establish all of the following:

That on or about April 5 of 2017, task force officers and detectives from the Pennsylvania Office of the Attorney General sent a text message to an unknown target using a telephone number received from a confidential source with the goal of purchasing heroin from an unknown target.

Law enforcement received a text message back from the unknown target asking how much money they had. Law enforcement and the unknown target exchanged text messages arranging a meet to purchase heroin from the unknown target for $260.

The target told law enforcement to call when they were close. When law enforcement arrived at the meeting location, the McDonald's on Penn Avenue in Wilkinsburg Borough, the target texted that he was on his way and asked them to wait.

Approximately 25 minutes later, the person associated with the target phone number called asking to now meet at the McDonald's in East Liberty. Police then went to the East Liberty McDonald's located at Broad Street in North Sheridan Avenue in the Western District of Pennsylvania and called the target number.

An undercover police officer described the vehicle he was operating to the target so the target could meet him.

The target then told the undercover officer he saw him park on Broad Street. As the target stated this, the undercover officer saw a male, the defendant, Hill-Johnson hang up his phone and walk toward the undercover police vehicle.

Hill-Johnson grabbed the passenger side door's front door handle of the vehicle where the undercover officer was sitting as law enforcement moved in for the takedown.

Hill-Johnson attempted to flee and resisted as police detained him. As Hill-Johnson resisted, a firearm fell from his waist and law enforcement observed Hill-Johnson throw one brick of suspected heroin. A holster was found on the inside of Hill-Johnson's

waistband. Law enforcement also recovered an additional bundle of suspected heroin from the defendant's sweatpants pocket and $900 was found in another pants pocket.

All of the suspected heroin recovered from Hill-Johnson was tested by the laboratory and found to contain Fentanyl. The government stipulates this amount of Fentanyl is less than four grams.

The firearm recovered from Hill-Johnson was a loaded nine millimeter Glock.

On the date charged in the indictment, Hill-Johnson knowingly possessed this firearm to protect himself, the Fentanyl he possessed with the intent to distribute and/or the proceeds of his drug trafficking.

THE COURT: Sir, in a moment I will ask you whether you agree with the prosecution's summary of what you did but, first, <u>do you understand your answers may later be used against you in a prosecution for perjury or making a false statement if you do not answer truthfully</u>?

(Off-the-record discussion between defense counsel and defendant.)

THE DEFENDANT: Yes, I agree.

THE COURT: Do you agree with the prosecution's summary of what you did?

THE DEFENDANT: Yes, I agree.

THE COURT: Are there any additions or corrections you wish to make?

THE DEFENDANT: No, sir.

Id., p. 31-33 (emphasis added).

Following Defendant's admissions, the Court continued with the hearing by asking Defendant about his decision to change his plea and his satisfaction with his counsel's representation of him. The exchange went as follows:

THE COURT: Court finds there is a factual

11

basis to accept defendant's plea of guilty to the
offenses charged in the indictment.
Having been advised of all your rights, do you
still intend to plead guilty?

THE DEFENDANT: Yes, sir.

THE COURT: Is that consistent with your
advice?
MS. FOREMAN: Yes, Your Honor.

THE COURT: Has anyone forced you in any way
to enter a plea of guilty to these charges?

THE DEFENDANT: No, sir.

THE COURT: Did you make this decision to
plead guilty of your own free will and voluntarily?

THE DEFENDANT: Yes, sir.

THE COURT: You understand everything I
discussed with you today?

THE DEFENDANT: Yes, sir.

THE COURT: Have you had any physical or
mental illness that affects your ability to understand
this proceeding or my explanation of your rights?

THE DEFENDANT: No, sir.

THE COURT: Counsel, do you have any doubt
about the defendant's competency to plead guilty?

MS. FOREMAN: No, Your Honor.

THE COURT: Sir, are you completely satisfied
with the attorney's advice and representation?

THE DEFENDANT: Yes, sir.

THE COURT: Is there anything she has done
that you think she should not have done?

THE DEFENDANT: No, sir.

> THE COURT: <u>Is there anything you had asked
> her to do that she has not done</u>?
>
> THE DEFENDANT: <u>No, sir</u>.
>
> THE COURT: My understanding is there is no
> plea agreement in this case, is that correct?
>
> MS. GROGAN: That's correct, Your Honor.

Id., p. 34-35 (emphasis added).

Although the Court began the status conference by swearing in the Defendant (id., p. 2),

and later, after the recess, reminded Defendant that he was still under oath (id., p. 16), the Court

confirmed for a third time that Defendant had given truthful answers to all of the Court's

questions that day:

> THE COURT: Have you answered truthfully all
> the questions I asked you today?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: The indictment charges you in
> Count 1 with possession with intent to distribute a
> quantity of Fentanyl, a Schedule II controlled
> substance, in violation of Title 21, United States Code,
> Section 841(a)(1) and 841(b)(1)(C). How do you plead,
> sir?
>
> THE DEFENDANT: Guilty.
>
> THE COURT: And the indictment charges you at
> Count 2 with possession of a firearm in furtherance of a
> drug trafficking crime, in violation of Title 18, United
> States Code, Section 924(c)(1)(A)(1). How do you plead,
> sir?
>
> THE DEFENDANT: Guilty.

**II. Standard of Review under 28 U.S.C.A. § 2255.**

A Section 2255 petition enables a defendant to petition the court that imposed the

sentence, collaterally attacking a sentence imposed after a conviction. 28 U.S.C.A. §2255; see

also *U.S. v. Cannistraro*, 734 F.Supp. 1110, 1119 (D.N.J. 1989), *aff'd*, 919 F.2d 133 (3d Cir.

1990). *cert. den'd*, 500 U.S. 916 (1991).  Pursuant to 28 U.S.C. § 2255, a federal prisoner may

move the sentencing court to vacate, set aside or correct a sentence "upon the ground that the

sentence was imposed in violation of the Constitution or laws of the United States, or that the

court was without jurisdiction to impose such sentence, or that the sentence was in excess of the

maximum authorized by law, or is otherwise subject to collateral attack . . . ." 28 U.S.C. § 2255.

Relief is "generally available only in 'exceptional circumstances' to protect against a

fundamental defect which inherently results in a complete miscarriage of justice or an omission

inconsistent with the rudimentary demands of fair procedure." *U.S. v. Gordon*, 979 F.Supp. 337,

339 (E.D.Pa.1997) (citing *Hill v. U.S.*, 368 U.S. 424 (1962)).

The Court considers a defendant's petition together with all files, records, transcripts and

correspondence relating to the judgment under attack.  See 28 U.S.C. § 2255.  A district court

considering a Section 2255 petition accepts " 'the truth of the movant's factual allegations unless

they are clearly frivolous on the basis of the existing record,' " *U.S. v. Booth*, 432 F.3d 542, 545

(3d Cir. 2005) (quoting *Virgin Islands v. Forte*, 865 F.2d 59, 62 (3d Cir.1989)), and a court

"abuses its discretion if it fails to hold an evidentiary hearing when the files and records of the

case are inconclusive as to whether the movant is entitled to relief." *Booth*, 432 F.3d at 546

(citing *U.S. v. McCoy*, 410 F.3d 124, 134 (3d Cir.2005).  However, the final disposition of a

Section 2255 motion lies with the discretion of the trial judge, see *Virgin Islands v. Nicholas*,

759 F.2d 1073, 1075 (3d Cir. 1985), and a district court may summarily dismiss a Section 2255

14

motion where the motion, files, and records "show conclusively that the movant is not entitled to relief." *U.S. v. Mason*, 2008 WL 938784, 1 (E.D.Pa.2008) (citing *Forte*, 865 F.2d at 62). "Section 2255 generally may not be employed to relitigate questions which were raised and considered on direct appeal," *U.S. v. DeRewal*, 10 F.3d 100, 105 n. 4 (3d Cir.1993) (internal quotations omitted).  Moreover, "if a petitioner has failed to raise an objection at the time of trial and has also failed to raise the issue on direct appeal, then collateral review of that claim is procedurally barred unless the petitioner is able to show 'cause' excusing his procedural default and 'actual prejudice' resulting from the alleged error or violation."  *Henry v. U.S*., 913 F.Supp. 334, 335 (M.D.Pa.1996). See also *U.S. v. Essig*, 10 F.3d 968, 979 (3d Cir.1993) (holding that the "cause and prejudice" standard set forth in *U.S. v. Frady*, 456 U.S. 152 (1982) "applies to § 2255 proceedings in which a petitioner seeks relief from alleged errors in connection with his sentence that he has not directly appealed").

A petitioner need not demonstrate cause and prejudice when raising a claim of ineffective assistance of counsel for the first time in a collateral attack.  *Massaro v. U.S.*, 538 U.S. 500, 504 (2003) (holding that an "ineffectiveness" claim can be brought in a collateral proceeding under § 2255 regardless of whether the same issue could have been addressed on direct appeal); *DeRewal*, 10 F.3d at 104.

When a motion is made under 28 U.S.C. § 2255, the question of whether to order a hearing is committed to the sound discretion of the district court.  In exercising that discretion, the court must accept the truth of the petitioner's factual allegations unless they are clearly frivolous on the basis of the existing record. *United States v. Day*, 969 F.2d 39, 41–42 (3d Cir. 1992).  Further, the court must order an evidentiary hearing to determine the facts unless the

motion and files and records of the case show conclusively that the petitioner is not entitled to relief. *Id*.; *United States v. Gordon*, 979 F.Supp. 337, 339 (E.D.Pa.1997).

The Court finds no need for an evidentiary hearing as the record herein conclusively establishes that Defendant is not entitled to the relief sought in his petition. 28 U.S.C. § 2255.

### III. Discussion

#### A. Lack of Probable Cause

##### 1. Applicable Law

Probable cause to arrest exists when the totality of the circumstances within the officer's knowledge is sufficient to warrant a person of reasonable caution to conclude that the person being arrested has committed or is committing an offense. *U.S. v. Laville*, 480 F.3d 187, 192 (3d Cir. 2007), citing *United States v. Myers*, 308 F.3d 251, 258 (3d Cir. 2002) ("the validity of an arrest under state law must never be confused or conflated with the Fourth Amendment concept of reasonableness, and that the validity of an arrest under state law is at most a factor that a court may consider in assessing the broader question of probable cause"). Under Pennsylvania law, law enforcement officers must have probable cause to believe that a felony has been committed and that the person to be arrested is the felon, prior to effectuating an arrest. *Commonwealth v. Clark*, 735 A.2d 1248, 1251 (Pa. 1999). Similarly, it is reasonableness that is the central inquiry under the Fourth Amendment. *United States v. Williams*, 417 F.3d 373, 376 (3d Cir. 2005). "[S]ufficient probability, not certainty, is the touchstone of reasonableness under the Fourth Amendment." *Hill v. California*, 401 U.S. 797, 804 (1971). Probable cause exists whenever reasonably trustworthy information or circumstances within an arresting officer's knowledge are sufficient to warrant a person of reasonable caution to conclude that an offense

has been or is being committed by the person being arrested.  *Draper v. United States*, 358 U.S. 307, 313 (1959); *Myers*, 308 F.3d at 255.

### 2. Analysis of probable cause[5]

Defendant's motion raises issues concerning the affidavit of probable cause, specifically claiming that on its face, the affidavit failed to support the issuance of a warrant and that it did not establish "when, how, what crimes, where crime(s) committed, [and] why affiant believes the source of the information."  ECF 156, p 1.  Based on these arguments, the Court believes that Defendant is referencing the Affidavit of Probable Cause which he filed at ECF 156-2 as an exhibit to his motion.

The Affidavit attached to Defendant's motion clearly states that the affiant received information about Defendant on April 5, 2017, from a confidential informant who was deemed by the officers to be reliable.  Although there are many reasons listed as to why the police officers believed that the informant was credible, most notably the informant had, in the past, provided other information to officers which led to arrests and/or convictions. The crimes committed were listed on the affidavit as well, and the two charges set forth in the indictment (to which Defendant pled guilty) reflect those charges.

Moreover, the information contained within the Affidavit of Probable Cause and Criminal Complaint (ECF 156-2) was reiterated by the Government during its summary of the evidence at the change of plea hearing (ECF 64).  Defendant admitted to this evidence, under oath, at the change of plea hearing.  Id.  Furthermore, these same statements, set forth in the Affidavit and Criminal Complaint describing the crimes in which Defendant engaged on April 5,

---

[5]  Defendant references "criminal complaint / incident number W17-03105" throughout his motion. This document was filed as an exhibit to Defendant's Motion (ECF 156-2), as was referenced in the "Factual Background" at subsection "I. A." above.

2017, and which the Government read aloud during the change of plea hearing, were re-printed in Defendant's Presentence Investigation Report.  Defendant raised no objections to the Presentence Investigation Report.

Based on the facts admitted as true by Defendant during his change of plea hearing, probable cause existed to arrest Defendant under both state and federal law.  All of Defendant's arguments with respect to the Affidavit of Probable Cause and the Criminal Complaint lack any merit given that all evidence of record conclusively establishes that Defendant is not entitled to the relief sought in his petition.

### B. Ineffective Assistance of Counsel

#### 1. Applicable Law

"A claim of ineffective assistance requires a defendant to establish that counsel's representation fell below an objective standard of reasonableness and that the deficient performance prejudiced the defendant." *McAleese v. Mazurkiewicz*, 1 F.3d 159, 166 (3d Cir. 1993), *citing Strickland v. Washington*, 466 U.S. 668, 687-88, (1984). "To establish prejudice, a defendant must demonstrate that there is a 'reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *Weeks v. Snyder*, 219 F.3d 245, 257 (3d Cir. 2000) (*quoting Strickland*, 466 U.S. at 694).

In assessing the first prong, the Supreme Court has instructed that "[t]he proper measure of attorney performance" is "reasonableness under prevailing professional norms." *Strickland*, 466 U.S. at 688.  This is an objective standard, and must be "viewed to the extent possible without 'the distorting effects of hindsight.' " *Duncan v. Morton*, 256 F.3d 189, 200 (3d Cir. 2001) (*quoting Strickland*, 466 U.S. at 688-90).  In addition, a "reviewing court 'must indulge a

strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.' " *McAleese*, 1 F.3d at 175 (*quoting Strickland*, 466 U.S. at 692).  "The defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' " *Strickland*, 466 U.S. at 689.

Addressing the second part of the *Strickland* analysis, the prejudice prong, the Supreme Court has explained that a "reasonable probability" is one that is "sufficient to undermine confidence in the outcome." *Id.* at 694.  In making the prejudice determination, the court must consider the totality of the evidence. *Id.* at 695.

A claim of ineffective assistance must identify the specific errors counsel has made. Conclusory allegations are not sufficient to support a petition under Section 2255. *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).

### 2. Analysis of Ineffective Assistance of Counsel Claim

Defendant asserts many failures on the part of his counsel.  The Court notes that Defendant had three very experienced federal criminal defense lawyers represent him over the life of this case.  Defendant began this process with Stephen Begler as his attorney.  Attorney Begler attempted to negotiate a plea deal with the Government based on Rule 11(c)(1)(C), but withdrew his appearance due to irreconcilable differences with Defendant, prior to Defendant changing his plea.

Next, Defendant was assigned Christy Foreman another highly regarded and experienced federal criminal defense attorney.  As noted above in the procedural background section, Attorney Foreman represented Defendant through the change of plea stage.  While under oath during the change of plea hearing, Defendant indicated that he was satisfied with the representation Attorney Foreman had given him.  During the change of plea, Defendant took an

open plea (having previously rejected the Rule 11(c)(1)(C) plea offer Attorney Begler had arranged) and pled guilty to both Counts of the indictment.

Finally, Defendant was represented by Marty Dietz who saw Defendant through the sentencing phase.

The Court will address Defendant's arguments individually.

### a. Counsel ineffective for failing to challenge criminal complaint

As noted above in the probable cause analysis (III. B. 1.), the criminal complaint set forth the same allegations that the Government attorney orally set forth during her summary of the evidence at the change of plea hearing (ECF 64).  Defendant agreed, under oath, at the change of plea hearing, that the details recited by the Government (the same details that were set forth in the criminal complaint) were indeed, true.  Id.

The criminal complaint states in relevant part:

> On 05Apr17 TFO [task force officer] from the State Attorney General's Office BNI formulated plans to conduct a buy and bust operation in the Borough of Wilkinsburg.
>
> Prior to this date Detectives were provided with the phone number from a confidential source reporting the unknown possessor of this phone was utilized in the past to secure heroin.  Having this number TFO Detectives formulated plans to contact this unknown subject to further investigate the trafficking of illegal narcotics.
>
> At 1248 hours a text message was sent to the above number.  An unknown subject answered the text and an arraignment [sic.]  was made to meet the subject later this date.
>
> At 1337 hours this number text messaged asking how much money we had.  I told the subject that I had $260.00 and the subject told me to call when I was close.
>
> At 1633 hours a text message was sent telling the unknown subject that we were at McDonalds on Penn Avenue.  This subject told me he was on his way and asked me to wait.

At 1659 hours a call was received from this number and a male asked that we drive to the McDonalds in East Liberty.

At 1732 hours surveillance and take-down units arrived in the area of McDonalds.  A call was placed to the unknown male and unknown male provided directions to Broad Street and North Sheridan Avenue.  Once parked on Broad Street the vehicle that Agent SHAFFER was operating was provided to this unknown subject.  The unknown subject, Daelon HILL-JOHNSON, told Agent SHAFFER that he saw him parked on Broad Street as Agent SHAFFER saw HILL-JOHNSON as he was hanging up his phone and walking toward Agent SHAFFERS vehicle.  HILL-JOHNSON was wearing a gray "GAP" hooded sweatshirt, black sweat pants and gray shoes all of which was provided to take-down units.  HILL-JOHNSON grabbed the passenger side front door handle as take-down officers moved in.  HILL-JOHNSON saw take-down officers moving in and attempted to flee but was detained.  HILL-JOHNSON resisted TFO JENA and TFO ROUKE as a firearm fell from the waist of him and he threw (1) brick of heroin stamped with a smiley face in purple.  He was finally detained in handcuffs.  The firearm was a Glock 9mmm (FUK255) that was loaded with (12) rounds of ammo.  The holster that the firearm was secured in was found also inside his waistband.

Following this HILL-JOHNSON was found with an additional bundle of heroin in his front right pocket of his seat pants that was stamped with a ladybug in red ink.  He also had $900.00 of USC in his left pants pocket, a small amount of crack cocaine in his right hooded sweatshirt and a small amount of marijuana in his front left pants pocket.

ECF 156-2, p. 2, hereinafter "criminal complaint statements."

As previously noted in the Court's probable cause analysis (III. B. 1.) above, these criminal complaint statements were read aloud during the change of plea hearing by the Government.  After an appropriate cautionary statement by the Court, Defendant agreed that these statements were accurate and that he had engaged in the conduct described.  Additionally, as noted in the Court's probable cause analysis (III. B. 1.) above, the criminal complaint statements were essentially re-printed in Defendant's Presentence Investigation Report.  See ECF 80, ¶ 1-12.  Defendant raised no objections to any portion of his Presentence Investigation

Report, thus indicating his acceptance of those paragraphs in the report which described his offense conduct.

The Court finds that Defendant's claim that his attorney (Attorney Foreman), in failing to challenge the criminal complaint, fell below an objective standard of reasonableness. Defendant has failed to demonstrate a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Here, had Attorney Foreman challenged any portion of the criminal complaint, the Government would have called one or more of the task force officers to testify (live) to statements that were already placed under oath in the criminal complaint. Because Defendant was arrested under a buy and bust operation, the criminal activity of which Defendant was indicted and to which he ultimately pled guilty, unfolded on the very day that the criminal complaint was prepared. Thus, there can be no question that Defendant's attorney made no mistake in failing to challenge the criminal complaint at any point in these proceedings. To do so would have been meritless.

Because Attorney Foreman observed the relevant proceedings, knew of materials outside the record, and interacted with Defendant, with Government counsel, and with this Court, it is "all too tempting" to "second-guess" her assistance after the plea of guilty was entered. Quoting *Strickland*, at 466 U.S. at 689. The Court finds that Attorney Foreman's representation did not rise to the level of incompetence under "prevailing professional norms," nor did her representation deviate from best practices or most common customs. Id., at 690.

For these reasons, the Court finds that Defendant's ineffective assistance of counsel argument for failure to challenge his criminal complaint cannot succeed.

### b.  Counsel ineffective for failing to raise improper venue, preindictment delay, selective prosecution "errors GJ proceeding" (no details), unlawful pretrial detention, duplicity, multiplicity

The Court next considers many of Defendant's arguments concerning his attorney's failure to raise various procedural and substantive issues relating to his indictment.  Simply stated, the Court finds all of these arguments to be without merit and/or frivolous.  For example, venue was proper, and thus, Defendant's counsel had no basis to challenge same.  Likewise, there was no basis for challenging Defendant's pretrial detention, nor his claims of duplicity or multiplicity.  With respect to Defendant's claims of preindictment delay, "selective prosecution," and "errors in [Grand Jury] proceedings," the Court finds no basis for these arguments, nor any details from Defendant as to how these alleged events would have altered the final outcome in his case.  Therefore, the Court finds that Defendant's ineffective assistance of counsel arguments on all of these grounds fail.

### c. Counsel ineffective for advising Defendant to plead guilty

The two-part *Strickland* test is applicable to petitioners who challenge the effectiveness of counsel after the entry of a guilty plea.  *Hill v. Lockhart*, 474 U.S. 52 (1985).  In the context of guilty pleas, the first part of the *Strickland* test asks whether counsel's performance in connection with the guilty plea meets the standard of objective reasonableness.  *Boyd v. Waymart*, 579 F.3d 330 (3d Cir. 2009).  The prejudice prong of Strickland "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process."  *Hill*, 474 U.S. at 59.  Stated differently, a defendant must demonstrate that there is a "reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  *United States v. Kauffman*, 109 F.3d 186, 190 (3d Cir. 1997).  "A defendant alleging ineffective assistance of counsel in the guilty plea context must make more

than a bare allegation that but for counsel's error he would have pleaded not guilty and gone to trial." *Parry v. Rosemeyer*, 64 F.3d 110, 118 (3d Cir. 1995), superseded by statute on other grounds. A defendant must demonstrate that the decision to reject the plea bargain and proceed to trial "would have been rational under the circumstances." *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010). Where the alleged error is counsel's failure to advise the defendant of an affirmative defense to the crime(s) charged, the prejudice inquiry "will depend largely on whether the affirmative defense likely would have succeeded at trial." *Hill*, 474 U.S. at 59.

Turning to the instant matter, Defendant did, in fact, reject a plea bargain – the Rule 11(c)(1)(C) offer which his first attorney, Attorney Begler, secured for him. After discharging Attorney Begler, Defendant was provided with another attorney – Attorney Foreman – who assisted him through his open change of plea. Defendant testified under oath at his change of plea hearing to the fact that he had not been forced or coerced in any way by anyone to plead guilty to the two count indictment, and that he was satisfied with Attorney Foreman's representation.

Moreover, on the day of the change of plea hearing, before agreeing to take a plea, Defendant challenged the weight of the drugs at issue. Only after receiving a favorable stipulation from the Government as to the weight of the drugs, did Defendant agree to proceed with the change of plea hearing, thereby further signaling the Court that he completely understood his decision to plead guilty to both charges.

Finally, given the totality of all of the evidence presented (most importantly, Defendant was caught "red-handed" by task force officers as outlined in the criminal complaint, orally during the change of plea hearing, and in his presentence investigation report), the Court finds

that there was and is no affirmative defense which Defendant could have raised, let alone an affirmative defense which would have succeeded at trial.

For all of the foregoing reasons, Defendant's ineffective assistance of counsel for advising Defendant to plead guilty, fails.

### d. Counsel ineffective during pre-trial and plea stages by concealing law and evidence/discovery materials which could have led to a dismissal

Defendant failed to present any evidence or describe how his counsel was ineffective during the pretrial and plea stages of his case. To the contrary, his actions in this matter illustrate the opposite.

First, Defendant's counsel (Attorney Begler) procured a plea offer for him which involved a stipulated sentence. Defendant rejected that plea offer, and Attorney Begler asked to withdraw from his case so he could obtain new counsel. The Court obliged.

Next, after Attorney Foreman was appointed, she called into question the quantity of drugs at issue upon Defendant's request. This ultimately led to a concession by the Government as to the quantity of drugs at issue, and the Government stipulated to the amount suggested by Defendant through his counsel.

Third, after securing the stipulation as to the quantity of drugs, Defendant took an open plea to both counts of the indictment. While under oath, Defendant expressed his satisfaction with Attorney Foreman's representation of him.

Finally, Defendant failed to describe or provide the alleged evidence or discovery materials that were not produced to him, prior to him changing his plea. Indeed, it would be difficult to discern what sort of exculpatory evidence or discovery materials could exist in light of the fact that Defendant was the subject of a buy and bust task force investigation. All

25

evidence against Defendant pertaining to the two charges brought against him in the indictment was derived directly from the buy and bust operation.  The information leading to the buy and bust operation came from a confidential informant whose prior assistance had led the officers to other criminal activities and convictions.

Accordingly, Defendant's assertion that his counsel was ineffective during pretrial and plea stages by concealing law and evidence/discovery materials which could have led to a dismissal is entirely without merit.

### e. Defendant's plea was coerced and not according to free will

Defendant's claim in this regard is false.  Defendant testified under oath during his change of plea hearing that he was <u>not</u> coerced to change his plea.  During the change of plea hearing, the following exchange occurred:

> THE COURT: Has anyone made a promise or
> assurance to persuade you to plead guilty?
>
> THE DEFENDANT: No, sir.
>
> THE COURT: Has anyone threatened you in any
> way to force you to plead guilty?
>
> THE DEFENDANT: No, sir.

ECF 64, p. 29.

Thus, the Court finds that Defendant's argument in this regard is meritless.

### f. Attorney Foreman was not competent

As noted in subsections "a" through "e" immediately above, Attorney Foreman's competence cannot be called into question.  She properly advised her client to plead guilty after: (1) he was subject of a buy and bust operation; (2) he rejected a Rule 11(c)(1)(C) offer through his prior counsel; (3) she challenged the weight of the drugs at issue and obtained a concession

26

from the Government favorable to Defendant; and (4) there was no exculpatory evidence, nor any affirmative defense that could be made to alter the outcome nor likelihood of conviction should the matter have proceeded to trial.

For these reasons, Defendant's argument fails.

### C. Defendant Additional Arguments

Defendant presents a myriad of other arguments, including some that are seemingly procedural, for example, his confusion over the fact that he was arrested on April 5, 2017, and placed into Allegheny County Jail, but later, following his arraignment on the federal charges set forth in the indictment, when the federal arrest warrant was docketed, Defendant believes there is a process that was not properly followed.  Defendant also argues: that he was falsely arrested, that Warden Orlando failed to inform him of his prisoner's rights, that his speedy trial rights were violated, that the Government failed to meet is burden of proof,  that false statements were made in the criminal complaint, and that the officer lied about the buy on April 5, 2017.  None of these conclusory statements are supported by any evidence.  To the contrary, the totality of all the evidence, including Defendant's own admissions under oath during the change of plea hearing, support the Court's decision to uphold Defendant's conviction.

### D. Certificate of Appealability

A court should issue a certificate of appealability where a petitioner makes a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A petitioner meets this burden by showing that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The Court finds that jurists of reason would not find it debatable whether Defendant states a valid claim of the denial of a constitutional right, and that jurists of reason would not find

it debatable whether the Court was correct in concluding that the petition does not present any claims upon which habeas relief may be granted. Therefore, the Court will deny a certificate of appealability.

An appropriate Order shall follow.


s/Arthur J. Schwab
Arthur J. Schwab
United States District Judge


cc:     All Registered ECF Counsel and Parties

Daelon Hill-Johnson
#180163
Allegheny County Jail
950 Second Ave.
Pittsburgh PA 15219